**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 9:23-cv-80282-RLR**

| | |
|---|---|
| ROBERT SCOT BUILDING VENTURE LLC and RSBV PATHWAY LLC, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| CREATIVE WEALTH MEDIA FINANCE CORP. and JASON CLOTH, | ) ) ) |
| Defendants. | ) |

**DEFENDANTS CREATIVE WEALTH MEDIA FINANCE CORP. AND JASON**
**CLOTH'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Creative Wealth Media Finance Corp. ("Creative Wealth") and Jason Cloth ("Cloth" and together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint ("Compl.") [ECF No. 1] filed by Plaintiffs Robert Scot Building Venture LLC ("RSBV") and RSBV Pathway LLC ("RSBVP") (collectively, "Plaintiffs") (i) for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (ii) with respect to the fraud claim against Cloth, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF THE ARGUMENT

This action is a garden variety contract dispute between Plaintiffs, investors, and Defendants, Canadian film-financiers. From July 2019 to May 2020, RSBV entered into agreements with Creative Wealth, a Canadian corporation based in Ontario, to participate in the financing of seven films (the "Films"). Those agreements provided, among other things, that RSBV would recoup its investments through the gross receipts generated by the respective Films (if any), that RSBV acknowledged the risks inherent in the investments, and that there was no assurance that it would recoup its investment. In May 2021, RSBVP entered into a separate agreement with Creative Wealth to finance the first season of a television series, entitled "*Pathway*." That agreement similarly provided that RSBVP would recoup its investments through the gross receipts generated by the first season of the series, to the extent there were any.

When the Films did not perform as expected and Plaintiffs did not recoup their investments, Plaintiffs filed the instant action, claiming breach of contract against Creative Wealth. RSBVP also asserts a fraud claim against Cloth in his individual capacity, vaguely claiming he induced it to invest in *Pathway* by misrepresenting that (i) the *other* prior films carried "zero" risk and would be repaid; and (ii) *Pathway* was "greenlit" for five seasons, not just one.

As an initial matter, the Complaint should be dismissed for lack of personal jurisdiction. There is no general jurisdiction over Defendants, Canadian residents who are neither incorporated in nor maintain their principal places of business in Florida.  They have no offices, employees, bank accounts or real estate in Florida, and Plaintiffs offer no nonconclusory allegations that Defendants regularly conduct business here.  Moreover, there is no basis for specific jurisdiction over Defendants, since they did not commit any torts in Florida or agree to perform any acts required under the relevant contracts—nearly all of which contain Ontario choice of law provisions—in Florida.  Regardless, exercising specific jurisdiction over Defendants does not comport with due process considerations, as Plaintiffs have not alleged that Defendants have any contacts—let alone the requisite minimum contacts—with Florida or that Defendants could have foreseen being hailed into a Florida court.

Second, even if the Court declined to dismiss the Complaint for lack of personal jurisdiction, RSBVP's fraud claim fails as a matter of law because it fails to allege with the particularity required under Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss. It plainly fails to allege (i) how Cloth's alleged statements were fraudulent; (ii) any details giving rise to a strong inference that Cloth had an intent to defraud and knew that his statements were false; and (iii) how any reliance on Cloth's purported statements could possibly be reasonable, given the clear disclaimers and acknowledgements of risk in the relevant film contracts, and the fact that the *Pathway* contract explicitly provides that RSBVP was investing in the first season of the series, with any repayment deriving from the proceeds of that season only.

Third, RSBVP's demand for punitive damages on its fraud claim against Cloth personally is plainly inappropriate and must be denied.  RSBVP alleges no facts demonstrating that Cloth acted with malice or reckless indifference and, therefore, punitive damages are unwarranted.

Accordingly, Defendants respectfully request that the Court grant Defendants' motion to dismiss the Complaint and grant such other relief as the Court deems just and proper.

## ALLEGATIONS OF THE COMPLAINT[1]

The facts relevant to this motion are derived from the Complaint, as well as the documents appended to the Declaration of Jason Cloth, sworn to on May 12, 2023, filed simultaneously herewith (the "Cloth Decl."). The facts relevant to this motion may be summarized as follows:

A.  Plaintiffs Enter into Contracts with Creative Wealth

1. *The Film Contracts Between RSBV and Creative Wealth*

Plaintiffs allege that, between July 2019 to May 2020, RSBV entered into a series of agreements pursuant to which RSBV invested money in Defendants' film projects (the "Film Contracts"). Compl. ¶ 14. For each such Film Contract, the parties entered into two agreements, a "Term Sheet" and a "Participation Agreement."[2] *See* Cloth Decl., Exs. A-J.

The first Term Sheet, dated July 29, 2019,[3] was for the financing of the film *Ghostbusters*, in which RSBV invested $1,000,000 (the "*Ghostbusters* Contract"). Compl. ¶¶ 15-16; Cloth Decl.

---

[1]  Defendants do not admit the truth of the allegations in the Complaint but recognize that, for the purposes of evaluating whether Plaintiffs have stated prima facie claims, the Court must accept the factual allegations as true. The Court should not, however, accept bare legal conclusions contained in the Complaint when evaluating this motion to dismiss.

[2]  Plaintiffs do not reference in their Complaint the Participation Agreements that the parties executed in connection with each film and Term Sheet. Nevertheless, because Plaintiffs cannot dispute the authenticity of these "relationship-forming" documents that are central to their claims, the Court may consider them at this stage. *Fontainebleau Fla. Hotel, LLC v. S. Fla. Hotel & Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1244 (S.D. Fla. 2020).

[3]  In their Complaint, Plaintiffs reference the dates that Plaintiff RSBV allegedly signed each of the Term Sheets for the films—which coincides with the effective date of the Participation Agreements for each such film—rather than the effective date listed on the Term Sheets (the "Effective Dates"). Because the Term Sheets do not indicate when Plaintiff RSBV signed them, and they became operative on their Effective Dates, Defendants will identify the Effective Dates.

Ex. A.  The second, dated January 14, 2020, was for the financing of the film *Monkey Man*, in which RSBV invested $750,000 (the "*Monkey Man* Contract").  Compl. ¶¶ 18-19; Cloth Decl., Ex. B.  The third, dated April 21, 2020, was for the financing of *Gossamer*, in which RSBV invested $250,000 (the "*Gossamer* Contract").  Compl. ¶¶ 21-22; Cloth Decl. Ex. C.  Fourth, RSBV made two investments in *Hailey and the Hero Heart* on or about April 21, 2020, pursuant to two Term Sheets, one for $250,000 and one for $750,000 (the "*HHH* Contracts").  Compl. ¶¶ 24-27; Cloth Decl. Exs. D, E.  Fifth, in May 2020, RSBV made two investments in *Bubbles Hotel* pursuant to two contracts, one for $250,000 and one for $750,000 (the "*Bubbles* Contracts").  Compl. ¶¶ 29-32; Cloth Decl. Exs. F, G.  The sixth, dated May 4, 2020, was for the financing of *Young Bear Grylls*, in which RSBV invested $1,000,000 (the "*YBG* Contract").  Compl. ¶¶ 34-35; Cloth Decl. Ex. H.  The seventh and final Film RSBV financed was *Fables*, in which RSBV made two investments pursuant to two Term Sheets, one on April 17, 2020, for $750,000, and one on July 24, 2020, for $250,000 (the "*Fables* Contracts").  Compl. ¶¶ 37-40; Cloth Decl. Exs. I, J.

   *2. The Pathway Contract Between RSBVP and Creative Wealth*

On May 19, 2021, RSBVP and Creative Wealth entered into a Term Sheet for RSBVP to invest $6,573,024 in the first season of the *Pathway* series (the "*Pathway* Contract").  Compl. ¶¶ 49-50; Cloth Decl. Ex. K.  As relevant to this motion, the *Pathway* Contract was titled "Term Sheet Memo, Financing for the First Season of the Series Entitled 'Pathway,'" Cloth Decl. Ex. K at 1.

   *3. Plaintiffs' Acknowledgements of Risk and Non-Reliance on Prior Representations*

Each of the Film Contracts at issue in this action make clear that Plaintiffs' recoupment of their investments were not guaranteed.  Indeed:

- In all of the Term Sheets, the parties agreed that Plaintiffs' investments "shall *all* be recouped from gross receipts generated by the [particular film]" to the extent there were any. *See* Cloth Decl. Exs. A-K, Term Sheet at p. 1 (emphasis added).[4]

- In the six Term Sheets for *Fables*, *Bubbles*, and *HHH*, RSBV represented and warranted that it "has relied on its own examination of the investment hereunder including, but not limited to, the LSA and the merits and risks involved.  Investor is aware that it may be required to bear the financial risks of this investment for an indefinite period of time."  *See* Cloth Decl., Exs. D-G, I-J, Term Sheet at p. 2.

- In each of the Participation Agreements, RSBV "acknowledge[d] the risks inherent in" the investments, including that "[t]here [wa]s no assurance that [RSVB] will earn a profit from or recoup its [investment]." Cloth Decl., Exs. A-J, Participation Agreement § 8(a).

Finally, each Participation Agreement provided there were "no representations, warranties, covenants, conditions or other agreements, express or implied, collateral, statutory or otherwise, between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement" and that "[t]he parties have not relied on and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Agreement." Cloth Decl., Exs. A-J, Participation Agreement at p. 6.

B.  Plaintiffs' Fraud Allegations

Plaintiffs allege that, at the beginning of 2021—approximately eight months before the maturity date of any of the Term Sheets—RSBV's principal, Robert Harris,[5] asked Cloth for an update on when payment on certain Film Contracts could be expected.  Compl. ¶ 43.  According to Plaintiffs, on February 24, 2021, in response to Harris' inquiry, Cloth emailed Harris explaining that the investments in *Fables*, *Bubbles*, and *HHH* carried "'zero' risk" and would be recouped by the third quarter of 2021—which would have been *ahead* of the repayment schedule set forth in

---

[4]  Though the particular language used in each Contract varies slightly, the essence and meaning are the same.

[5]  Robert Harris is the principal of both Plaintiffs, RSBV and RSBVP. Compl. ¶¶ 3, 11.

the respective Term Sheets.  *Id.* ¶¶ 44-45.  Cloth purportedly also told Harris that the *Monkey Man* investment would be repaid by late summer 2021.  *Id.* ¶ 46.  In conclusory fashion, Plaintiffs allege that "RSBV is informed and believes that" Cloth "knew at that time (based on the actual status of the corresponding Films) that there was a substantial likelihood" that the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* investments "would not be timely repaid."  *Id.* ¶¶ 45-46.

Finally, Plaintiffs assert that, in May 2021, Cloth told Harris over the phone that the *Pathway* series "had already been 'greenlit' for five seasons and that Harris should therefore invest in that project."  *Id.* ¶ 47.

C.  Plaintiffs' Causes of Action

Through this action, Plaintiffs assert two causes of action.  The first is a claim for breach of contract by both Plaintiffs against Creative Wealth for its alleged failure and refusal "to repay any of the monies loaned" under the Film Contracts and *Pathway* Contract.  Compl. ¶ 56.

The second is a fraud claim by RSBVP against Cloth.  *See id.* ¶¶ 58-65. According to RSBVP, Cloth misrepresented to Harris: (i) that the *Fables*, *Bubbles*, and *HHH* investments would be repaid by the third quarter of 2021; (ii) that there was "'zero' risk" associated with the *Fables*, *Bubbles*, and *HHH* investments; (iii) that the *Monkey Man* investment would be repaid by late summer of 2021; and (iv) that the *Pathway* series had been "greenlit" for five seasons.  *Id.* ¶¶ 59-60.  Plaintiffs state, in a purely conclusory manner, that they are "informed and believe" that Cloth "knew the above representations were false at the time they were made" and that they were "made with the intent that RSBVP rely on the representations, and to induce Plaintiff RSBVP to invest substantial monies in *Pathway*."  *Id.* ¶¶ 61-62.  RSBVP seeks punitive damages, claiming that Cloth, in supposedly making the alleged misrepresentations, "acted willfully, maliciously, oppressively and despicably with the full knowledge of the adverse effect of their [sic] actions on

6

Plaintiff RSBVP, and with willful and deliberate disregard of the consequences to Plaintiff RSBVP such as to constitute oppression, fraud or malice." *Id.* ¶ 65.

## ARGUMENT AND MEMORANDUM OF LAW

**I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

All claims against Defendants, residents and domiciliaries of Canada, (*see* Compl. ¶¶ 8-10), must be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Plaintiffs bear the "'burden of making out a prima facie case for personal jurisdiction'" over each of Defendants with nonconclusory allegations.  *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1232 (M.D. Fla. 2019).  This Court may only exercise personal jurisdiction to the extent permitted by Florida's long arm statute and the requirements of due process.  *Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1091 (Fla. 2013).  Two theories of personal jurisdiction are available: general jurisdiction and specific jurisdiction.  *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1318 (S.D. Fla. 2018).  Here, neither applies.

A.  Plaintiffs Fail to Establish General Jurisdiction Over Defendants

Courts may exercise general jurisdiction over a defendant "'who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise, … [and] whether or not the claim arises from that activity." *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1290 (S.D. Fla. 2021) (quoting Fla. Stat. § 48.193(2)).  A corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction, and courts outside of a corporation's place of incorporation or principal place of business may only exercise general jurisdiction in "exceptional cases." *Daimler AG v. Bauman*, 571 U.S. 117, 126, 136 (2014); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).  In those rare, exceptional cases, "'[a] court may assert general jurisdiction over foreign … corporations,'

without offending due process 'when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum state.'" *Id.* at 1204 (citations omitted). Here Creative Wealth, as a company incorporated in and with its principal place of business in Canada, and Cloth, who is a citizen of and lives in Canada, are not subject to general jurisdiction in Florida. Compl. ¶¶ 8-9; Cloth Decl. ¶¶ 2-3.

Plaintiffs offer nothing to support a theory of general jurisdiction and they do not even allege that this Court has general jurisdiction over Defendants. They instead allege, without basis, that Defendants "transact[] business in the State of Florida," without even attempting to assert that those contacts are "continuous and systematic." Compl. ¶¶ 8-9, 11-12. Defendants do not have any offices or employees here (Cloth Decl. ¶ 3), and tellingly absent from the Complaint are any factual allegations suggesting that either Defendant regularly conducts business here.

This is not an "'exceptional' case[] in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business," *Carmouche*, 789 F.3d at 1204 (citing *Daimler AG*, 571 U.S. at 136), and there is therefore no basis for general jurisdiction.

B. Plaintiffs Fail to Establish Specific Jurisdiction Over Defendants

Equally unavailing is Plaintiffs' apparent invocation of Fla. Stat. §§ 48.193(1)(a)(2) and (7)[6] to argue that this Court has specific jurisdiction over Defendants.

---

[6] Though Plaintiffs do not specify which subsection of the long-arm statute they are relying on, they appear to only implicate Fla. Stat. §§ 48.193(1)(a)(2) and (7). To the extent that Plaintiffs rely on Fla. Stat. § 48.193(1)(a)(1), that provision is unavailing, as Plaintiffs have not alleged any cause of action arising from Defendants' "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." The Complaint does not sufficiently allege that they "transact[] business in the State of Florida" and there is no allegation that Defendants have an office or agency in Florida. Compl. ¶¶ 8-9; Fla. Stat. § 48.193(1)(a)(1). Nor does the Complaint point to a single meeting that either of Defendants attended, or any activity they undertook, in Florida. *Ferenchak*, 572 F. Supp. 3d at 1293.

*1. No Specific Jurisdiction Over Creative Wealth Under Fla. Stat. § 48.193(1)(a)(7)*

Under Fla. Stat. § 48.193(1)(a)(7), a Florida court may only exercise personal jurisdiction over a non-resident who "breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." Though the Complaint vaguely posits that Creative Wealth breached the Film Contracts "by failing to perform acts required by the contract to be performed in this state, *i.e.*, paying Plaintiffs in Florida," (Compl. ¶ 12), that allegation is belied by the Film Contracts themselves. None of the subject agreements even mention Florida, let alone contain a requirement that Creative Wealth pay Plaintiffs in Florida. *See* Cloth Decl., Exs. A–K.

In any event, "courts have consistently determined that the place of payment does not confer specific jurisdiction under Florida's long-arm statute." *Ferenchak*, 572 F. Supp. 3d at 1293 (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989) (holding that mere failure to pay money in Florida, standing alone, would not suffice to obtain jurisdiction over a nonresident defendant)); *Omega IM Grp., LLC v. Louidar, LLC*, No. 17-22141-CIV, 2018 WL 1069446, at *13 (S.D. Fla. Feb. 16, 2018), *report and recommendation adopted*, No. 17-22141-CIV, 2018 WL 1875835 (S.D. Fla. Mar. 6, 2018); *LaVoie v. Artists Rts. Enf't Corp.*, No. 2:20-CV-756-JLB-NPM, 2021 WL 1688848, at *1 (M.D. Fla. Apr. 29, 2021); *Am. Sampling, Inc. v. White Labs., Inc.*, 564 So. 2d 590, 592 (Fla. Dist. Ct. App. 1990).

Here, there are no additional facts—whether alleged or not—that would render Creative Wealth's purported failure to pay money to Plaintiffs in Florida sufficient to obtain jurisdiction over Creative Wealth. There is no allegation that the parties negotiated the agreements in Florida, the agreements do not contemplate any activity or performance in Florida, and there is no allegation that the parties ever met in Florida. Under these circumstances, there is no personal jurisdiction over Creative Wealth pursuant to Fla. Stat. § 48.193(1)(a)(7).

## 2. No Specific Jurisdiction Over Cloth Under Fla. Stat. § 48.193(1)(a)(2)

Under Fla. Stat. § 48.193(1)(a)(2), a Florida court may exercise personal jurisdiction over a non-resident who "commit[s] a tortious act within this state." Plaintiffs merely allege that Cloth "purposefully directed [his] fraudulent misrepresentations to Plaintiffs into Florida, where Plaintiffs have their principal places of business and where their principal, Robert Harris, resides." Compl. ¶ 11. Assuming that Cloth even made fraudulent misrepresentations to Harris through email and/or over the phone—to be clear, he did not make any misrepresentations—there are no allegations that Harris was *actually in Florida* when he received the purported email or phone call. Plaintiffs merely conclude that the alleged misrepresentations were directed "into Florida" where they reside. These allegations are insufficient to establish personal jurisdiction over Defendants.

At best, Plaintiffs assert that Cloth directed a single email and single phone call into Florida. Compl. ¶¶ 11, 44-47. But as Plaintiffs themselves allege, it was actually *Harris* that initiated contact with Cloth—Cloth's singular email and phone call into Florida were only in response to Harris' inquiry. Compl. ¶ 43 ("[W]hen RSBV's principal, Robert Harris, requested information pertaining to the status of payment," Cloth responded in a February 24, 2021 email); ¶ 47 (failing to provide any indication as to whether Cloth called Harris or vice versa). As the United States Supreme Court has stated, "the plaintiff cannot be the only link between the defendant and the forum" for the purposes of establishing jurisdiction over a defendant. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see Ferenchak*, 572 F. Supp. 3d at 1294 (relying on *Walden* and finding no specific jurisdiction under Fla. Stat. §§ 48.193(1)(a)(2) or (7)). At most, Plaintiffs caused Cloth's contact with Florida that gave rise to Plaintiffs' alleged fraud claim; as such, "the Court does not have specific jurisdiction under Fla. Stat. §§ 48.193(1)(a)(2) and 48.193(1)(a)(7)." *Ferenchak*, 572 F. Supp. 3d at 1294; *see Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030,

1034 (11th Cir. 1991); *Green v. USF & G Corp.*, 772 F. Supp. 1258, 1262-63 (S.D. Fla. 1991); *Walack v. Worldwide Mach. Sales, Inc.*, 278 F. Supp. 2d 1358, 1369-70 (M.D. Fla. 2003).

Because Plaintiffs do not satisfy Florida's long-arm statute, the Complaint must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(2).

C.  Exercising Personal Jurisdiction Over
    <u>Defendants Does Not Comport with Due Process</u>

Even if the Court were to find that Plaintiffs sufficiently established that this Court has personal jurisdiction over Defendants, exercising jurisdiction over them does not comport with federal due process considerations. The due process analysis consists of two inquiries: (1) has the plaintiff "established sufficient minimum contacts with the forum to allow the forum constitutionally to assert jurisdiction over him?"; and (2) "would the assertion of such jurisdiction offend 'traditional notions of fair play and substantial justice?'" *Sun Bank*, 926 F.2d at 1034 (quoting *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990)). "The key to any constitutional inquiry into personal jurisdiction is foreseeability." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

### 1.  *Defendants Lack the Requisite Minimum Contacts with Florida*

To establish the requisite minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The "'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984).

Defendants have insufficient minimum contacts with Florida. "The fact that a Florida resident has contracted with a nonresident is insufficient in and of itself to establish automatically

the minimum contacts necessary to confer personal jurisdiction on the nonresident." *Am Sampling*, 564 So. 2d at 592; *see Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Nor do the surrounding circumstances alleged in the Complaint establish the necessary minimum contacts. As stated, Plaintiffs *do not even allege* that (i) the Film Contracts and *Pathway* Contract were negotiated in Florida; (ii) Defendants ever visited Florida in connection with the contracts; or (iii) the relevant contracts provide for any activity taking place in Florida. Moreover, the Complaint does not allege that Defendants even knew where Plaintiffs were located when they executed the contracts or when Cloth responded to Harris' inquiries. The fact that Plaintiffs reside in Florida has no impact on the terms of the parties' contracts, and even if Harris was in Florida when the parties entered into them and when Cloth purportedly made the alleged misrepresentations, the "[r]andom, attenuated, or fortuitous contact initiated by a Florida plaintiff does not satisfy the minimum contacts requirements." *Walack*, 278 F. Supp. 2d at 1368 (citing *Sun Bank*, 926 F.2d at 1034)[7]; *see Green*, 772 F. Supp. at 1262-63. Plaintiffs' "unilateral contacts with Florida should not be imputed to" Defendants. *Walak*, 278 F. Supp. 2d at 1370.

---

[7]  In *Sun Bank*, the court held that several telephone calls between the Florida plaintiff and nonresident defendant, in which the defendant allegedly made fraudulent misrepresentations that caused injury to the plaintiff, were insufficient to qualify as minimum contacts. 926 F.2d at 1034. The defendant in *Sun Bank*, like Defendants here, did not purposefully direct his activities toward Florida, nor were his contacts the result of any other activities the defendant initiated in Florida. *Id.* It was the plaintiff that was seeking information on a potential loan who contacted the nonresident defendant, who then allegedly made fraudulent misrepresentations. The Eleventh Circuit reasoned that it was a matter of chance that the calls originated in Florida, rather than from another state, and that the defendant did not have minimum contacts with Florida. *Id.*

Put simply, Defendants cannot be subject to jurisdiction in Florida merely because Creative Wealth entered into contracts with Florida residents and Cloth allegedly sent one email and participated in one phone call in response to a Florida resident's inquiries.  *Cf. Burger King*, 471 U.S. at 479-80 (finding minimum contacts where dispute "grew directly out of a contract which had a substantial connection with that State" and the contract involved a twenty-year franchise that "envisioned continuing and wide-reaching contacts with Burger King in Florida").  Unlike the defendant in *Burger King*, Defendants did not purposefully avail themselves of the benefits or protections of Florida law, and it was not foreseeable that they would be hailed into court here.[8]

2.  *The Exercise of Specific Personal Jurisdiction Does Not Comport with Traditional Notions of Fair Play and Substantial Justice*

Factors relevant to the consideration of fair play and substantial justice include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *Id.* at 477 (citations omitted).  "The burden on the defendant is 'always a primary concern.'"  *Volt, LLC v. Volt Lighing Grp.*, 369 F. Supp. 3d 1241, 1249 (M.D. Fla. 2019) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980).

Given Defendants' lack of contacts with Florida and the burden that would be imposed if they are forced to litigate in Florida, exercising personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice.  Defendants' evidence and witnesses are located in Toronto, where they conduct their business and reside.  On the other hand, requiring

---

[8]  To the contrary, the parties expressly agreed that any disputes would be resolved under Ontario law and designated the Ontario courts as their preferred forum. Cloth Decl., Exs. A-J, Term Sheets at p. 3; Participation Agreements § 17.

Plaintiffs (which share the same principal, Robert Harris) to litigate this dispute in Canada is fair and just, given that RSBV explicitly agreed to the jurisdiction of the Ontario courts and waived all objections that such courts provide "an inconvenient forum." *See* Cloth Decl. Exs. A-J, Participation Agreement § 17.[9]

Because the burden on Defendants is the paramount consideration, and since Defendants lack minimum contacts with Florida, the determination of "whether the burden on [Defendants] outweighs the other considerations is unnecessary." *Volt, LLC*, 369 F. Supp. 3d at 1249. Accordingly, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction.

## II. RSBVP FAILS TO STATE A CLAIM FOR FRAUD AGAINST CLOTH

RSBVP's fraud claim alleges that Cloth fraudulently induced it to "invest substantial monies in *Pathway*" through representations (i) concerning the timing of the recoupments of the investments in the *Fables*, *Bubbles*, *HHH*, and *Monkey Man* Films and (ii) that *Pathway* had already been "greenlit" for five seasons. Compl. ¶¶ 59-60, 62. Under Florida law, a plaintiff alleging a fraud claim must plead with particularity "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; and (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation.'" *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F. 4th 1298, 1307 (11th Cir. 2022); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) ("To prove fraud under Florida law, the plaintiff must show that ... 'the plaintiff's reliance was reasonable.'")

---

[9] Each of the Participation Agreements provide that RSBV "irrevocably attorns and submits to the non-exclusive jurisdiction of the courts of the Province of Ontario with respect to any matters arising out of this Agreement and waives objection to the venue of any proceeding in such court or that such court provides an inconvenient forum." *Id.*

(citations omitted).  RSBVP fails to state a fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b) and cannot establish reasonable reliance.

A.  RSBVP Fails to Plead its Fraud Claim with the Requisite Particularity

To plead a fraud claim with sufficient particularity, a party must specify (i) "'precisely what statements were made in what documents or oral representations or what omissions were made'"; (ii) "the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same'"; (iii) "'the content of such statements and the manner in which they misled the plaintiff'"; and (iv) "'what the defendants obtained as a consequence of the fraud.'"  *Sovereign Bonds Exch. LLC v. Fed. Rep. of Germany*, 899 F. Supp. 2d 1304, 1316 (S.D. Fla. 2010) (citations omitted), *aff'd*, 701 F.3d 641 (11th Cir. 2012).

Although the scienter element may be "alleged generally," Fed. R. Civ. P. 9(b), "'pleadings generally cannot be based on information and belief.'"  *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-22124-CIV, 2011 WL 382588, at *5 (S.D. Fla. Feb. 3, 2011) (quoting *United States v. Clausen*, 290 F.3d 1301, 1310 (11th Cir. 2002)).  Such pleadings are only permitted if the "specific factual information about the details of the fraud are peculiarly within the defendants' knowledge or control" and "only when the complaint adduces specific facts supporting a strong inference of fraud."  *Id.* (citations omitted).  "[B]ald or otherwise conclusory allegations will not suffice," *id.* (citations omitted), and the limited relaxation of Rule 9(b) "'must not be mistaken for [a] license to base claims of fraud on speculation and conclusory allegations,'" *Clausen*, 290 F.3d at 1314 n.25 (citations omitted).

RSBVP has failed to allege its fraud claim with sufficient particularity and it should be dismissed.  Though RSBVP claims that Cloth stated (i) in a February 2021 email that the prior Film Contracts would be repaid and involved "zero" risk; and (ii) during a May 2021 phone call

(of which there is apparently no written record) that *Pathway* had been "greenlit" for five seasons (Compl. ¶¶ 44-47), RSBVP still has not adequately alleged fraud (or fraudulent inducement).  It has not identified how Cloth's alleged statements induced RSBVP to take any action, how it is that those statements were fraudulent when made, or how it can be inferred from those communications that Cloth harbored an intent to defraud RSBVP.

To manufacture a claim that Cloth fraudulently induced it to enter into the *Pathway* Contract, RSBVP vaguely—and illogically—asserts that a February email (concerning unrelated Films) somehow induced it to invest monies in the *Pathway* series in May.  But RSBVP fails to explain *how* Cloth's statements concerning Creative Wealth's intent to perform under the unrelated Film Contracts—statements made *three months* prior to the *Pathway* investment—so induced it.

Moreover, it is fundamental that "promises of future action," such as intent to perform under a contract, "are usually insufficient" to support a fraud claim.  *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014) (citing *Weaver v. State*, 981 So. 2d 508, 509 (Fla. Dist. Ct. App. 2008).  This is particularly true where the statement of intent to perform under prior, unrelated contracts, if true, would have required Creative Wealth to make payments to RSBV *before* the times allegedly required under the Term Sheets.  *Compare* Compl. ¶ 59 (alleging Cloth represented that the *Fables*, *Bubbles*, and *HHH* investments would be repaid "by the third quarter of 2021," and the *Monkey Man* investment would be "repaid by 'late summer' of 2021"), *with id.* ¶ 41 (alleging November 30, 2021 maturity date on *Fables* investment), *id.* ¶ 33 (alleging May 2022 maturity date on *Bubbles* investment), *id.* ¶ 28 (alleging April 21, 2022 maturity date on *HHH* investment), *and id.* ¶¶ 18-20 (not specifying any maturity date on the *Monkey Man* investment).

Further, RSBVP asserts that it "is informed and believes that Defendant Cloth knew the … representations were false at the time they were made."  *Id.* ¶ 61.  But this conclusory allegation is

based solely on alleged information and belief about "the actual status of the corresponding Films," without explaining what that "actual status" was, how RSBVP became aware of it, or how that "actual status" belied Cloth's purported representations.  *Id.* ¶¶ 44-46.  Nowhere does RSBVP allege that Creative Wealth "'had no intention of [timely repaying Plaintiffs] *at the time the promise was made*'" (*i.e.*, months before Creative Wealth was allegedly required to repay the investments under the Film Contracts).  *Adler*, 31 F. Supp. 3d at 1386 (emphasis added).

As for Cloth's alleged misrepresentation that *Pathway* had been "greenlit" for five seasons—notwithstanding his alleged knowledge that it "had only been 'greenlit' for a single season" (Compl. ¶ 47)—RSBVP fails to explain how such an alleged misrepresentation had anything to do with its investment.  Indeed, it is indisputable that RSBVP knew at the time it signed the *Pathway* Contract that the entirety of its investment was for the financing of only the *first season* of the series, not five seasons.  That is because the *Pathway* Contract expressly provides that RSBVP was providing funds to Creative Wealth in connection with the "Project," which the uppercase, bolded title of the *Pathway* Contract defines as "FINANCING FOR THE FIRST SEASON OF THE SERIES ENTITLED 'PATHWAY.'"  Cloth Decl. Ex. K at 1.  Moreover, the *Pathway* Contract explicitly states that the investment "shall be recouped and net profits paid from gross receipts generated by the *first season of the Project* …, if any."  *Id.* at 2 (emphasis added).

Accordingly, RSBVP has failed to allege facts creating any inference, let alone "a strong inference," that Cloth harbored fraudulent intent.  *Great Fla. Bank*, 2011 WL 382588 at *7.

B.  <u>RSBVP Has Not Pled Justifiable Reliance with the Requisite Particularity</u>

RSBVP alleges, without any detail or explanation, that it "reasonably relied on Defendant Cloth's representations."  Compl. ¶ 63.  But "[b]are allegations of reliance on alleged fraudulent

statements, without supporting details, are insufficient under Rule 9(b)." *Aspen Am. Ins. Co. v. Tasal, LLC*, 508 F. Supp. 3d 1179, 1183-84 (M.D. Fla. 2020); *see also Mergens*, 166 F.3d at 1117.

Plaintiffs cannot establish reasonable reliance, since "[r]eliance on fraudulent representations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (emphasis in original). "[F]raudulent inducement claims will fail even where the subsequent contract simply says nothing about the allegedly false promise." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir. 2000). This is because of the "'reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties.'" *Id.* (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996)).

Viewed in this light, if Cloth's alleged representations regarding the timing of the repayment of the *Fables*, *Bubbles*, and *HHH* Loans and the status of future *Pathway* seasons were "not important enough to make it into the comprehensive written agreement [the *Pathway* Contract], [they] must not have been material." *Id.* at 1342-43 (citations omitted). Plaintiffs' failure to allege how the alleged misrepresentations were material requires dismissal. *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-21722, 2007 WL 9701121, at *5 (S.D. Fla. Mar. 11, 2007).

Moreover, RSBVP alleges it relied on Cloth's representation "that there was 'zero' risk associated with the *Fables* Loans, *Bubbles* Loans, and *HHH* Loans," Compl. ¶¶ 45, 59, despite the fact that such an alleged representation contradicts the (i) "Source of Repayment" provision in the Term Sheets, which provides that the investment would be recouped from the film's gross receipts, "if any," (*see* Cloth Decl. Exs. A-K, Term Sheet at p. 1); (ii) "Investor Representations and

Warranties" provision in the relevant Term Sheets, through which RSBV represented that it "has relied on its own examination of the investment," including the "risks involved" and acknowledged that "it may be required to bear the financial risks of this investment for an indefinite period of time," (*see id.*, Exs. D-G, I-J, Term Sheet at p. 2); and (iii) Participation Agreements, through which RSBV acknowledged "the risks inherent in making loans and/or equity investments." that Creative Wealth "ma[de] no[] representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture," and that "[t]here [wa]s no assurance that [RSBV] will earn a profit from or recoup its Participation." *See id.*, Exs. A-J, Participation Agreement § 8(a).

Nevertheless, RSBVP claims that it may—during contract negotiations—rely on its counterparty's alleged statements rather than the explicit terms of the contract.  But the clear disclaimers in the *Fables*, *Bubbles*, and *HHH* Contracts contradict any notion that there was "zero" risk associated with RSBVP's investments, and the *Pathway* Contract makes no mention of RSBVP's reliance on any of Cloth's representations.  RSBVP had the means to discover the alleged falsity of Cloth's alleged misrepresentation that there was "zero" risk (*i.e.*, by simply reading the contracts they signed) and nevertheless assert that they relied on Cloth's alleged representation, which amounts to, at best, "puffing," "sales talk," or a "pure expression of opinion"—it "is not a misrepresentation of fact and cannot form the basis for a fraud action under Florida law." *S.K.Y. Mgmt.*, 2007 WL 9701121, at *4-5 (citing *White v. Crandall*, 143 So. 871, 877 (Fla. 1932)); *see Grimes v. Lottes*, 241 So. 3d 892, 896 (Fla. Dist. Ct. App. 2018).

"Under Rule 9(b), if [RSBVP] had any possibility of stating a fraud claim from these statements [RSBVP] would have to allege specifically how a sophisticated investor would have relied upon such sales talk in entering into a multi-million dollar transaction like this one." *S.K.Y.*

19

*Mgmt.*, 2007 WL 9701121, at *5. It cannot do so, given the clear, unambiguous disclaimers in the various contracts at issue in the action, and its fraud claim should therefore be dismissed.

## III.    RSBVP'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

At a minimum, the Court should dismiss RSBVP's overreaching demand for punitive damages. "[U]nder Florida law, proof of an intentional tort by itself cannot support an award for punitive damages"; rather, "there must be an additional showing of malice, moral turpitude, wantonness or willfulness associated with [the defendant's] conduct." *G.M. Brod. & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1536 (11th Cir. 1985). "Such damages 'are recoverable only against defendants whose wrongful conduct is particularly reprehensible.'" *Id.* (citations omitted).

RSBVP does not—and cannot—allege that Cloth acted for "malicious" or "reprehensible" purposes. There is no allegation of any improper motive or personal gain. Nor does RSBVP allege any facts in support of its claim that Cloth acted with a "willful and deliberate disregard of the consequences to Plaintiff RSBVP." Compl. ¶ 65. The Complaint, which is devoid of any allegations demonstrating Cloth engaged in such behavior, cannot justify a demand for punitive damages and it should be accordingly dismissed. *See, e.g.*, *McNamara v. Fla. Power & Light Co.*, No. 17-cv-81181, 2018 WL 582537, at *8 (S.D. Fla. Jan. 29, 2018) (dismissing punitive damages claim because complaint did "not plead any facts demonstrating any malice or reckless indifference on the part of Defendants to warrant punitive damages").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety.

Dated:  May 12, 2023

Respectfully submitted,

BERGER SINGERMAN LLP

By: */s/ Leonard K. Samuels*
Leonard K. Samuels
Florida Bar No. 501610
lsamuels@bergersingerman.com
Marianne Curtis
Florida Bar No. 92729201
mcurtis@bergersingerman.com
East Las Olas Blvd., Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 525-9900

HERRICK, FEINSTEIN LLP
William R. Fried, Esq.
New York Bar No. 2166676
(*pro hac vice admission pending*)
Samuel J. Bazian, Esq.
New York Bar No. 5300215
(*pro hac vice admission pending*)
Two Park Avenue
New York, New York 10016
Telephone: (212) 592-1400

*Attorneys for Defendants Creative Wealth Media Finance Corp. and Jason Cloth*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on this 12th day of May, 2023, and certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

By: _/s/ Leonard K. Samuels_
       Leonard K. Samuels