UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80282-ROSENBERG

ROBERT SCOT BUILDING VENTURE LLC;
and RSBV Pathway LLC,

                                Plaintiffs,

v.

CREATIVE WEALTH MEDIA FINANCE CORP;
and JASON CLOTH,

                                Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Robert Scot Building Venture LLC ("RSBV") and RSBV Pathway LLC ("RSBVP") (collectively, "Plaintiffs") hereby oppose Defendants Creative Wealth Media Finance Corp ("Creative Wealth" or "CWMF") and Jason Cloth's ("Cloth") (collectively, "Defendants") Motion to Dismiss (the "Motion" or "Mot.") (ECF No. 21) and state as follows:

**INTRODUCTION**

The allegations of Plaintiffs' Complaint are straightforward. Plaintiffs loaned Defendants over $13 million for several film and television productions. Neither the principal, nor the contractually required interest on those loans, has been repaid. Moreover, Defendants made a series of fraudulent statements to induce Plaintiffs to loan them money.

Defendants seek to dismiss Plaintiffs' Complaint for supposed lack of personal jurisdiction and purported failure to allege fraud with particularity. Both grounds for requested dismissal should be seen for what they are—a continuation of Defendants stalwart efforts to avoid paying Plaintiffs monies that are unquestionably owed.

As explained below, this Court has personal jurisdiction over Defendants under two provisions of Florida's long arm statute. Defendants committed an intentional tort in this state by

1

purposefully directing their fraudulent misrepresentations to Plaintiffs into Florida, where Plaintiffs have their places of business and where their principal, Robert Harris, resides. *See* Fla. Stat. § 48.193(1)(a)(2). Defendants also entered into numerous contracts with Plaintiffs and then breached those contracts while Plaintiffs were resident in Florida by, *inter alia*, failing to perform an act required by the contract, *see* Fla. Stat. § 48.193(1)(a)(7). Namely, Defendants failed to make the required loan payments to Plaintiffs in Florida. Each of these grounds provides minimum contacts with Florida such that the exercise of jurisdiction over Defendants comports with due process. *See Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020).

Moreover, despite Defendants' assertions to the contrary, the allegations of the Complaint meet the pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. The Complaint has adequately set forth the "who, what, when, where, and how of the allegedly false statements" and then allege[d] generally that those statements were made with the requisite intent," which is all that Rule 9(b) requires. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). By way of example, Plaintiffs describe the fraudulent misrepresentations that Defendants made about repayment of the loans and the production status of the *Pathway* television series.

Finally, the Complaint's request for punitive damages is proper because there are sufficient allegations that Cloth acted with malice or reckless indifference.

Defendants' Motion should be denied in its entirety.

## **RELEVANT BACKGROUND**

Plaintiffs RSBV and RSBVP are Florida limited liability companies with their principal places of business in Jupiter, Florida. ECF No. 1 (Compl.) ¶¶ 6-7. Robert Harris, the principal of both RSBV and RSBVP, is a Florida resident. *Id*. ¶ 11. Defendant CWMF is a Canadian corporation with its principal place of business in Ontario and Defendant Cloth is a Canadian citizen. *Id*. ¶¶ 8-9.

From July 2019 to May 2021[1], RSBV entered into a series of agreements with CWMF

---

[1] Paragraph 14 of the Complaint contains a typographical error and inadvertently states that the Term Sheets were entered into from July 2019 to May *2020* but the immediately following paragraphs of the Complaint

under which RSBV loaned millions of dollars to CWMF for the production of seven films: *Ghostbusters, Monkey Man, Gossamer, Hailey and the Hero Heart ("HHH"), Bubbles Hotel, Young Bear Grylls,* and *Fables* (the "Term Sheets"). *Id*. ¶¶ 2, 15-42.

The parties entered into all of the Term Sheets (other than the *Ghostbusters* and *Monkey Man* Term Sheets) while RSBV was a Florida registered business and Harris was a Florida resident. Indeed, contrary to Defendants' assertion that "[n]one of the subject agreements even mention Florida," Mot. at 10, RSBV's Florida address is plainly set forth on the very first page of several of the Term Sheets. *See id*. ¶¶ 15-42; *see also* ECF No. 22-3 at pp. 37 (*Gossamer* Term Sheet), 55 (*HHH* Term Sheet), 72 (*HHH* Second Term Sheet), 87 (*Bubbles Hotel* Term Sheet), 104 (*Bubbles Hotel* Second Term Sheet), 114 (*Young Bear Gyrylls* Term Sheet); Harris Decl. ¶ 10.

By early 2021, RSBV still had not received back any of the monies loaned under the Term Sheets. When RSBV's principal, Robert Harris, asked about the payment status, Cloth made repeated false assurances to Harris, both over the phone and via email, that payment was forthcoming. *Id*. ¶ 43.

Specifically, Cloth first informed Harris in a February 24, 2021 email that there was "zero" risk associated with the *Fables*, *Bubbles*, and *HHH* Loans—but Plaintiffs allege that Cloth knew at that time (again, based on the actual status of the corresponding Films) that there was a substantial likelihood that those loans would not be timely repaid. Harris Decl. ¶ 12.

Cloth next assured Harris in a separate February 24, 2021 email that the *Fables*, *Bubbles*, and *HHH* Loans would "turn out to be fantastic investments." Harris Decl. ¶ 13.

Cloth further informed Harris in a third February 24, 2021 email that the *Monkey Man* Loan would be repaid by "late summer" of 2021 at the latest – even though Plaintiffs allege that Cloth knew at that time (based on the actual status of *Monkey Man*) that this was not possible. *Id*. at ¶ 46. Indeed, *Monkey Man* still has not been released. *See* Om Prakash Kaushal, MONKEY MAN

---

(¶¶ 15-42) and the actual Term Sheets make clear that the Term Sheets were entered into through May *2021*. The timing of the Term Sheets is confirmed by Harris' declaration submitted herewith. *See* Harris Decl. ¶ 9.

3

RELEASE DATE: WHEN IS IT COMING? DAILY RESEARCH PLOT (2023), https://dailyresearchplot.com/2023/05/16/monkey-man-release-date-when-is-it-coming/ (last accessed Jun 2, 2023).

In or around the beginning of May 2021, Cloth informed Harris over the phone that a television series titled *Pathway* had already been "greenlit" for five seasons and pushed Harris to invest in that project. Cloth made this representation to Harris knowing it was false. At the time, *Pathway* had only been "greenlit" for a single season. *Id*. ¶ 47.

Cloth made each of the above-described misrepresentations for the purpose of inducing Plaintiffs to invest an additional $6 million in the *Pathway* series. In reliance on these misstatements, RSBVP invested in *Pathway*. *Id*. ¶ 48. To date, Plaintiffs have not been repaid even a single penny on any of their loans under the Term Sheets or in connection with *Pathway*. *Id*. ¶ 4. Defendants are, therefore, in breach of the contracts.

Cloth purposefully directed each of his calls and emails on behalf of CWMF containing fraudulent misrepresentations into Florida. Plaintiffs have been located and have had their principal places of business in Florida since June 2020. Moreover, Plaintiffs' principal, Robert Harris, has also resided in Florida since June 2020. *Id*. ¶ 12; *see also* Harris Decl. ¶¶ 3-4.

Defendants were fully aware that Plaintiffs and Harris were located in Florida—as described above, starting in July 2020, Plaintiffs' Jupiter, Florida, address appeared on the very first page of several of the Term Sheets that Defendants signed. *See* ECF No. 22-3 at pp. 37 (*Gossamer* Term Sheet), 55 (*HHH* Term Sheet), 72 (*HHH* Second Term Sheet), 87 (*Bubbles Hotel* Term Sheet), 104 (*Bubbles Hotel* Second Term Sheet), 114 (*Young Bear Gyrylls* Term Sheet).

**ARGUMENT**

I. **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

    A. **Legal Standard**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023). Florida federal and state courts employ a two-step analysis to determine whether personal jurisdiction exists over

a nonresident defendant. *See id.; see also Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla. 1989). "A court has personal jurisdiction over a non-resident defendant if (1) the state's long-arm statute provides jurisdiction, and (2) the exercise of such jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020).

### B. This Court has Jurisdiction Over Defendants Under Fla. Stat. § 48.193(1)(a)(2)

Under Florida's long-arm statute, a court has personal jurisdiction over a defendant who has committed a tortious act within Florida. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F. 3d 1162, 1168 (11th Cir. 2005); *see also* § 48.193(1)(a)(2).

"In order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Both the Florida Supreme Court and the Eleventh Circuit have long held that "committing a tortious act" in Florida "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida" as long as the cause of action arises from those communications. *See Wendt*, 822 So. 2d at 1253*; see also Acquadro v. Bergeron,* 851 So.2d 665, 670 (Fla. 2003) ("telephonic communications made by [defendant] are sufficient to form the basis for personal jurisdiction in this case."); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010) (posting of defamatory material about a Florida company that was accessible in Florida constitutes committing a tortious act within Florida); *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1273 (11th Cir. 2022) (same).

By way of example, in *SkyHop*, the plaintiff alleged that the defendant had committed a tort by emailing the plaintiff in Florida and threatening damage to the plaintiff's software. *See* 58 F.4th at 1222. The Eleventh Circuit found that jurisdiction was proper under Florida's long arm statute because the plaintiff had alleged that the defendant committed a tort in Florida via its email, and the plaintiff's cause of action arose from that tort. *Id*. at 1228 ("[G]iven that SkyHop alleged that [Defendant] committed a tort in Florida, and SkyHop is suing [Defendant] for that tort, it is easy to conclude that the cause of action arises from the Florida tort.").

In this case, just as in *SkyHop*, Defendants directed into Florida both telephone calls and emails constituting torts that form the basis for Plaintiffs' action. Specifically, Defendants' communications contain fraudulent misrepresentations regarding whether and when Plaintiffs' loans would be repaid and a blatant misrepresentation that *Pathway* had already been "greenlit" for five seasons. Those fraudulent communications include:

- A February 2021 email in which Cloth asserted that there was "zero" risk associated with the *Fables*, *Bubbles*, and *HHH* Loans. *Id*. ¶ 45.
- A separate February 2021 email in which Cloth reassured Harris that the *Fables*, *Bubbles*, and *HHH* Loans would "turn out to be fantastic investments." Harris Decl. ¶ 13.
- A third February 2021 email in which Cloth told Harris that the *Monkey Man* Loan would be repaid by "late summer" of 2021 at the latest. *Id*. ¶ 46.
- A telephone call in or around the beginning of May 2021 during which Cloth represented to Harris over the phone that a television series titled *Pathway* had already been "greenlit" for five seasons. *Id*. ¶ 47.

Each of these communications were made to Plaintiffs' principal, Harris, who is a Florida resident, and directed at Plaintiffs, who are Florida limited liability companies. These facts, standing alone, are sufficient to confer personal jurisdiction over defendants. *See, e.g., SkyHop*, 58 F.4th at 1228; *1 Stop Maryland, LLC v. Pods United States LLC*, No. 8:22-CV-602-WFJ-AAS, 2023 WL 23102, at *4 (M.D. Fla. Jan. 3, 2023) (where Plaintiff alleged that Defendant fraudulently represented it was capable of delivering COVID-19 test kits within a week of payment and failed to do so, Defendant's "purported fraud constitutes a tort committed within Florida, as it was aimed at a Florida-based company that suffered injury in Florida.").

Defendants' arguments to the contrary are unavailing.

Defendants first contend that the Complaint is technically deficient because Plaintiffs did not include an allegation that Harris was physically present in Florida when he received the tortious communications. Not so. *See Tufts v. Hay*, 977 F.3d at 1211 (where the complaint alleges that

"'[a]t all times pertinent to this action' Mr. Tufts was a resident of Florida and the Tufts Law Firm was operating in Florida," it was reasonable to infer that "when [defendants] made such misrepresentations to Mr. Tufts, those misrepresentations were made in Florida."); *see also Price v. Kronenberger,* 24 So. 3d 775, 776 (Fla. 5th DCA 2009) (finding specific jurisdiction under long arm statute where Defendant sent an "e-mail to various members of [Plaintiff organization,] some of whom live in Florida"). Defendants' argument is, in any case, a red herring, because Harris was physically present in Florida at the time he received the tortious emails and phone calls. *See* Harris Decl. ¶¶ 15, 17.

Defendants next assert that jurisdiction is improper because "it was actually Harris that initiated contact with Cloth—Cloth's singular email and phone call into Florida were only in response to Harris' inquiry." Mot. at 10. But "[t]he cases considering whether a telephonic communication constituted a tortious act in Florida have not explicitly hinged a finding of jurisdiction on whether or not the nonresident defendant initiated the phone call into Florida. Rather, the cases focus on whether the nonresident defendant made the subject communications during a phone call between the out-of-state defendant and someone in Florida." *Internet Sols.*, 39 So. 3d at 1209; *see also Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09-22285-CIV, 2010 WL 3452341, at *6 (S.D. Fla. Sept. 1, 2010) ("The Florida Supreme Court has acknowledged that other courts who have asserted personal jurisdiction through telephonic communications did not 'hinge' their determination on whether or not the nonresident defendant initiated the phone call.").

Simply put, the fraudulent statements in Defendants' emails and telephone calls into Florida are quintessential tortious acts that invoke specific jurisdiction under Section (1)(a)(2) of Florida's long arm statute.

### C. This Court has Jurisdiction Over Defendants Under Fla. Stat. § 48.193(1)(a)(7)

As discussed above, Defendants' commission of torts directed to the state of Florida are sufficient, standing alone, to establish specific jurisdiction over Defendants. The Court also has jurisdiction over Defendants for the separate and independent reason that Defendants breached the

7

contracts between the parties in Florida by failing to make the required payments owed under the contracts.

Florida's long arm statute provides that a non-resident defendant is subject to specific jurisdiction in Florida when the party "breach[es] a contract in [Florida] by failing to perform acts required by the contract to be performed in the state. Fla. Stat.§ 48.193(1)(a)(7).

Both federal and state courts throughout the state of Florida recognize that failure to make payments owed under a contract where payment is due in Florida is sufficient to satisfy Section (1)(a)(7) of Florida's long-arm statute. *See TOA Trading LLC v. Mullen Auto., Inc.*, No. 22-21089-CV, 2023 WL 2815471, at *1 (S.D. Fla. Mar. 22, 2023); *Company.com, LLC v. Cindi's Rest. Corp.*, 2022 WL 3344623, at *4 (S.D. Fla. Aug. 12, 2022); *New Life Mgmt. Co. v. Sandy Lane Hotel Co., Ltd.*, No. 13-CV-60566, 2013 WL 12152494, at *2 (S.D. Fla. Aug. 20, 2013); *Metnick & Levy, P.A., v. Seuling*, 123 So. 3d 639, 641 (Fla. 4th DCA 2013); *Def. Control USA, Inc. v. Atlantis Consultants Corp.*, 4 So. 3d 694, 698 (Fla. 3d DCA 2009).

In *TOA Trading*, the plaintiffs entered into an agreement with the defendants where the defendants agreed to pay plaintiffs a finders' fee for their services. 2023 WL 2815471, at *1. After bringing suit for breach of contract, the defendants moved to dismiss the complaint, claiming the court did not have personal jurisdiction over them because they were out of state entities. *Id*. at *3. In rejecting the defendants' argument, the court found the defendants were subject to specific personal jurisdiction because the parties had entered into an agreement, the defendants were contractually obligated to pay the plaintiffs a finders' fees, and the defendants had breached the agreement by failing to pay the finders' fee. *Id*. The agreement was silent as to what state payment was to be made, but the court cited to the well-known principle that a breach occurs in the state where the plaintiff is domiciled. *Id*. Thus, because the plaintiffs were domiciled in Florida, the court found that the defendants' alleged failure to pay the finders' fees satisfied Section 1(a)(7) of Florida's long-arm statute.

Likewise, in *Metnick & Levy, P.A., v. Seuling*, the plaintiff (a law firm) entered into a contract with the defendant to perform legal services. 123 So. 3d 639, 641 (Fla. 4th DCA 2013).

8

Unhappy with the plaintiff's services, the defendant terminated the relationship and the plaintiff sued for breach of contract and tortious interference. *Id*. at 642. Although the circuit court initially granted the defendant's motion to dismiss for lack of personal jurisdiction, the appellate court reversed, finding the defendant was subject to personal jurisdiction for breaching a contract in the state. *Id*. at 643. The appellate court found that since the contract between the parties was silent as to place of payment, the place of payment was the Florida office of the plaintiff and jurisdiction existed on that basis. *Id*.

Consistent with the holding in *Metnick*, Florida courts have unequivocally held that "when a contract is silent as to place of payment, it is presumed to be the place of residence of the payee." *See TOA,* 2023 WL 2815471, at *2; *Fentriss v. Gateway Bank FSB*, No. 8:15-CV-2675-T-23MAP, 2016 WL 4097066, at *2 (M.D. Fla. Aug. 2, 2016) ("[W]here a contract involves the payment of money and no place of payment is expressly agreed on, it may be implied that payment is to be made where the payee resides or has an established place of business, and where payment under the contract may be made."); *Cindi's Rest. Corp.,* 2022 WL 3344623, at *4 ("The parties agree that the contracts do not specify from where Defendants must pay the ETF. However, as Plaintiff correctly notes, Florida courts consider the place of residence of the payee to be the location of payment when the contracts are silent as to the place of payment.").

Defendants argue in their Motion that Section (1)(a)(7) of the long arm statute does not apply in this case. Their argument is two-fold. Defendants make the confounding argument that "[n]one of the subject agreements even mention Florida." Mot. at 9. Defendants next argue that the fact that the contract requires payment to Plaintiffs in Florida is not sufficient to confer jurisdiction under Section (1)(a)(7) of the long arm statute. Defendants are wrong.

First, not only do several of the contracts mention Florida, they mention Florida in the first clause of the contract. And, what is perhaps even more important is the reason why the contracts mention Florida. Florida is identified as Plaintiffs' place of incorporation and principal place of business. *See* ECF No. 22-3, at 37; 55; 72; 87; 104; 114 (listing Plaintiffs' Florida address). Thus, Defendants were put on full notice that they were engaging with Florida entities.

9

Second, Defendants rely on Judge Bloom's decision in *Ferenchek* to argue that the fact that a contract requires payment in Florida is not sufficient to confer jurisdiction. Mot. at 9 (citing *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1293 (S.D. Fla. 2021)). While Judge Bloom did conclude in *Ferenchak* that "courts have consistently determined that the place of payment does not confer specific jurisdiction under Florida's long-arm statute," as noted above, the majority of state and federal courts in Florida have reached the opposite conclusion.

Defendants strikingly fail to acknowledge Judge Bloom's subsequent decision in *Company.com, LLC v. Cindi's Rest. Corp.,* No. 22-CV-20863, 2022 WL 3344623, at *4 (S.D. Fla. Aug. 12, 2022), which demonstrates how this case is clearly distinguishable from *Ferenchak*.

In *Cindi's Restaurant*, Judge Bloom found that specific jurisdiction was conferred under Section (1)(a)(7) because, in addition to the requirement that payment be made in Florida: (i) the defendants contracted with the plaintiff while fully aware that the plaintiff was located in Florida; (ii) representatives of the defendant regularly contacted the plaintiff while in Florida; and (iii) the contract contained Florida choice of law and choice of venue provisions. *Cindi's Rest. Corp.*, 2022 WL 3344623, at *5.

In this case—despite Defendants' flagrant mischaracterization to the contrary—Defendants contracted with Plaintiffs fully aware that Plaintiffs were located in Florida. ECF No. 1 (Compl.) ¶¶ 15-42; Harris Decl. ¶¶ 3-6, 10; ECF No. 22-3, at 55; 72; 87; 104; 114; listing Plaintiff RSBV's Florida address. In addition, Cloth regularly contacted Plaintiffs' principal while he was located in and a resident of Florida. ECF No. 1 (Compl.) ¶¶ 43-48; Harris Decl. ¶¶ 15, 17. Thus, even if the Court were to accept Defendants' preferred analysis, Judge Bloom's ruling in *Cindi's* dictates that Section (1)(a)(7) of the Florida long arm statute confers jurisdiction over Defendants in this case.

### D.     Exercising Jurisdiction Over Defendants Satisfies Due Process Requirements

In addition to Florida's long-arm statute being satisfied, Defendants here have minimum contacts with Florida such that exercise of jurisdiction over them does not offend traditional notions of fair play and substantial justice.

In evaluating "minimum contacts" courts must "ensure that parties have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" *TOA Trading*, 2023 WL 2815471, at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "The fair warning requirement is satisfied if the defendant has 'purposefully directed' his activities at the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. "In other words, jurisdiction is proper where the defendant has engaged in conduct that creates a 'substantial connection' with the forum state, such that the defendant 'should reasonably anticipate being haled into court there.'" *Id*.

Where a defendant negotiates and enters into a contract with a Florida-based company, they have "purposefully directed their activities at Florida." *Id.* at *3. And, when a defendant engages in "phone calls and emails, which are related to the conduct giving rise to this lawsuit," that is sufficient to establish minimum contacts in Florida, *Id*. This is especially true with respect to intentional torts directed to a Florida resident. *See Licciardello v. Lovelady,* 544 F.3d 1280, 1285 (11th Cir. 2008) ("Intentional torts … may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum."); *Tufts*, 977 at 1212 (finding defendant's misrepresentations made to Florida Plaintiff sufficient for jurisdiction).

Defendants' reliance on *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991), is unavailing. In *Sun Bank*, because the defendant had "entered into no contract" with, and had not "purposefully directed" any activities at, any Florida residents, the Court determined that his contacts with Florida were entirely "fortuitous" and declined to exercise jurisdiction. *Id*. at 1034. The opposite is true here. Defendants purposefully directed their activities into Florida by (1) making fraudulent representations in emails and telephone calls directed into Florida and (2) negotiating and entering into contracts with Florida-based companies. *See TOA Trading LLC*, 2023 WL 2815471, at *3-4 ("Plaintiffs' claims arise out of the activity Defendants 'purposefully directed' into the state of Florida, and Defendants should reasonably have anticipated being 'haled into court' here.").

Exercising personal jurisdiction also comports with traditional notions of fair play and substantial justice. In evaluating this prong, courts consider "relevant factors including the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Tufts*, 977 F.3d at 1212. Here, Florida's interest in protecting its residents (RSBV, RSBVP and Harris) from out-of-state-defendants' misconduct outweighs any inconvenience to defendants. *See id*. ("While we acknowledge that litigating in Florida places some burden on [defense] counsel, the interest of the forum state and the judicial system's interest in resolving the dispute overcome any concerns about [the defense's] burden. Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida.").[2] Accordingly, personal jurisdiction over Defendants satisfies the due process clause.

## II. RSBVP HAS STATED A CLAIM FOR FRAUD AGAINST CLOTH.

### A. Legal Standard

There are four elements of fraudulent misrepresentation under Florida law[3]: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010).

---

[2] Defendants point to the Term Sheets' Ontario choice of law provision but notably do not, and cannot, argue that the parties agreed to Ontario as the exclusive forum, or provide any support for the contention that this provision trumps Florida's interest in the lawsuit under due process considerations. *See Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-CV-306-J-34JRK, 2014 WL 1268584, at *21 (M.D. Fla. Mar. 27, 2014) ("Significantly, courts have 'refused to dismiss a suit or transfer an action to the stated forum when the clause is deemed permissive.'") (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 (11th Cir. 1999)).

[3] "A federal court applies the substantive law of the forum state in a diversity case, unless federal constitutional or statutory law requires a contrary result." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774–75 (11th Cir. 2000).

Under Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The "particularity" requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (noting that Rule 9(b), which requires a party to plead fraud with particularity, "must not abrogate the concept of notice pleading"); *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 298 (11th Cir. 2015) (where fraud pleading "fairly apprised [the opposing party] of their claim" it was "sufficient under our system of notice pleading"). "Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

### B. RSBVP Has Stated a Claim for Fraud Under Both Florida Law and Rule 9(b)

Defendants argue that RSBVP has failed to plead its fraud claim with the requisite particularity under Rule 9(b) and that RSBVP has not sufficiently pled reasonable reliance. Both arguments fail.

#### 1. RSBVP Has Met the Pleading Standard Under Rule 9(b)

According to Defendants, RSBVP's fraud allegations are insufficient under Rule 9(b) because RSBVP has not "identified how Cloth's alleged statements induced RSBVP to take any action, how it is that those statements were fraudulent when made, or how it can be inferred from those communications that Cloth harbored an intent to defraud RSBVP." Mot. at 16. Defendants' contentions are contrary to both the applicable case law and the facts in this case.

In *Erin Taylor Editions*, No. 17-21013-CIV, 2019 WL 2106192 (S.D. Fla. Mar. 29, 2019), the court held that the plaintiffs—who had alleged fraud claims against an artist and his company for misrepresenting artwork's value—had met Rule 9(b)'s pleading standards. Specifically, the court found that the plaintiffs had alleged: (1) "precisely what statements and omissions they contend were made, *i.e.*, the 'what,'; (2) the "time and place," such as "in follow up to an email

13

sent on November 22, 2015"; "*i.e.*, the 'when' and the "where'"; (3) "who specifically made each of these alleged statements and omissions" (the artist), "*i.e.*, the 'who'; and (4) "the specific content of each of these statements," and "the manner in which [Plaintiffs] were misled –[Plaintiffs] were led to believe that [Defendant's] artworks were worth significantly higher prices than they were actually worth under well-established, art-industry standards, *i.e.*, the 'how'"; (5) what [Defendants] obtained from them as a result of this fraud, *i.e.*, damages." *Id*. at *7. Therefore, the court held, the defendants' "argument that this fraudulent misrepresentation count lacks the required particularity under Rule 9(b) is meritless." *Id*.

      The present case is on all fours with *Erin Taylor Editions*. RSBVP has set forth the "what," *i.e.*, the specific fraudulent statements—such as the "zero risk" associated with the loans, that the films would "turn out to be fantastic investments," the knowingly unrealistic (based on the film's production schedule) loan repayment date for *Monkey Man*, and that *Pathway* had been "greenlit" for five seasons, despite Cloth's knowledge of it only being approved for one season at that time. RSBVP has also set forth the "when", the "where," the "who" and the "how"; for example, "in a February 24, 2021 email," Jason Cloth purposefully misled Plaintiffs to believe that the *Monkey Man* loan would be promptly repaid when he knew it would not. Finally, Plaintiffs have set forth damages: that Cloth made these statements for the purpose of inducing RSBVP to invest $6,573,024 in the *Pathway* project—a sum which also has never been repaid.

      These allegations "fairly apprised [Cloth] of [RSBVP's] claim" and are "sufficient under [the Eleventh Circuit's] system of notice pleading." *Woods*, 634 F. App'x at 298; *see also Mizzaro*, 544 F.3d at 1237; *Crossroads Fin. LLC v. Alma-Mater Collection, Inc.,* No. 15-81095-CIV, 2020 WL 13451063, at *7 (S.D. Fla. Oct. 15, 2020) ("[Plaintiff] alleges that [Defendant] made these promises with the intent of inducing [Plaintiff's] reliance, and knew the promises were false when she made them. This supports an inference that Crossroads entered the Agreement without a present intent to perform within the time frames promised. And, recognizing that malice, intent, knowledge and other conditions may be averred generally, Fed. R. Civ. P. 9(b), the Court finds these allegations sufficient to survive a motion to dismiss.").

Defendants further contend that "promises of future action," such as intent to perform under a contract, "are usually insufficient" to support a fraud claim. Mot. at 16. This, too, is incorrect, and in any event at odds with Plaintiffs' actual allegations. Florida courts have recognized that "a promise can support a fraud claim, however, when the promisor had no intention of performing at the time the promise was made. This is because a statement of the promisor's present intent is considered a statement of present fact." *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014); *see also Mejia v. Jurich*, 781 So.2d 1175 (Fla. 3d DCA 2001) (holding that misrepresentations regarding future performance respecting residential development allegedly made with no intention of performing were enough to state fraudulent inducement claim). Here, RSBVP has alleged that Cloth knew the above misrepresentations he made were false at the time they were made, including specifically the dates by which he promised the *Monkey Man* loan would be repaid. Moreover, Cloth's fraudulent misrepresentation about *Pathway—i.e.*, that it had been "greenlit" for five seasons—was a statement of present fact, and thus that allegation alone is sufficient for purposes of pleading fraud. Accordingly, RSBVP has sufficiently pled its fraud claim under Rule 9(b).

In a final attempt to dismiss Plaintiff's Complaint, Defendants argue that Plaintiffs failed to plead that they reasonably relied on Defendants' fraudulent statements. While, as a matter of fact, Defendants' statement is incorrect, it is wholly irrelevant to the Court's analysis.

As the Florida Supreme Court has made clear, "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler*, 44 So.3d at 105; *see also Byrnes v. Small*, 142 F. Supp. 3d 1262, 1270 (M.D. Fla. 2015). In support of their statement to the contrary, Defendants cite to *Aspen Am. Ins. Co. v. Tasal, LLC*, 508 F. Supp. 3d 1179, 1183-84 (M.D. Fla. 2020). Defendants, however, have a problem. In *Aspen*, the court was analyzing a complaint under **New York**, not Florida, fraud standards. *Id.* ("Under **New York law**, a party properly pleads a fraud claim if it demonstrates: (1) a material misrepresentation of a fact; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) causation of injury (i.e.,

damages).") (emphasis added). Accordingly, Plaintiffs' fraud claim meets the requisite pleading standards.

### III.   PLAINTIFF RSBVP IS ENTITLED TO SEEK PUNITIVE DAMAGES.

Despite Defendants' contentions to the contrary, "[p]unitive damages can be recovered in Florida for fraud." *Thomas v. Generac Power Sys. Inc.*, No. 21-12997, 2022 WL 4091735, at *4 (11th Cir. Sept. 7, 2022); (citing *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 538–39 (Fla. 1987)); *Cates v. ZELTIQ Aesthetics, Inc.*, No. 619CV1670ORL40LRH, 2020 WL 13413674, at *4 (M.D. Fla. Aug. 25, 2020) ("Here, Plaintiff's allegations support causes of action for fraudulent misrepresentation and concealment. If Plaintiff proves the intentional misconduct necessary to succeed on Count V, the jury may also award punitive damages."). If RSBVP succeeds in proving its fraud claim, punitive damages may be awarded. Defendants' claim that RSBVP did not allege malice or reckless indifference also is incorrect. RSBVP specifically alleged that, in making his fraudulent statements, Cloth "acted willfully, maliciously, oppressively and despicably" and "with willful and deliberate disregard of the consequences to Plaintiff RSBVP such as to constitute oppression, fraud or malice." Compl. ¶ 65. Accordingly, RSBVP's request for punitive damages is proper and should not be dismissed.

### CONCLUSION

For the above stated reasons, this Court has personal jurisdiction over Defendants and Plaintiff RSBVP has sufficiently stated a claim for fraud against Defendant Cloth. Accordingly, for all the reasons set forth above, this Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: June 5, 2023.                                  Respectfully submitted,

                                                      */s/   Scott N.  Wagner*
                                                      Scott N. Wagner
                                                      Fla. Bar No.: 51662
                                                      Ilana Drescher
                                                      Fla. Bar No.: 1009124

Stephanie Koutsodendris
Fla. Bar No.: 123583
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-3456

Telephone: 305-374-7580
Email: swagner@bilzin.com
Email: idrescher@bilzin.com
Email: skoutsodendris@bilzin.com
Email: eservice@bilzin.com

David B. Jonelis (*pro hac vice*)
Kelsey J. Leeker (*pro hac vice*)
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067
Tel.: (310) 556-3501
Email: djonelis@lavelysinger.com
Email: kleeker@lavelysinger.com

*Attorneys for Plaintiffs Robert Scot Building Venture LLC and RSBV Pathway LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 5, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ *Scott N. Wagner*
Scott N. Wagner