UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80282-ROSENBERG

ROBERT SCOT BUILDING VENTURE LLC
& RSBV PATHWAY LLC,

   Plaintiffs,

v.

CREATIVE WEALTH MEDIA FINANCE CORP
& JASON CLOTH,

   Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** comes before the Court upon the Defendants' Motion to Dismiss. DE 21. The Court has reviewed the Motion, the Plaintiffs' Response, DE 35, and the Defendants' Reply, DE 39, and it is otherwise fully advised in the premises. For the reasons below, the Motion to Dismiss is **DENIED**.

### I.  Factual Background

The Plaintiffs in this case are Robert Scot Building Venture LLC ("RSBV") and RSBV Pathway LLC ("RSBVP"), Florida limited liability companies. DE 1 ¶¶ 6-7. Robert Harris is the principal of both entities. This dispute arose out of a series of contracts executed between the Plaintiffs and Creative Wealth Media Finance Corporation ("CWMF"), a Canadian corporation. *Id.* ¶¶ 1-8. Jason Cloth is the principal of CWMF. *Id.* ¶ 3. Mr. Cloth and CWMF are the Defendants in this case. *Id.* ¶¶ 8-9.

Accepting all of the facts pled in the Complaint as true, from July of 2019 to May of 2020, RSBV executed a series of contracts with the Defendants to lend the Defendants more than

$5,000,000 to finance the Defendants' production of seven film projects. *Id.* ¶¶ 14-42. Each project received its own loan, resulting in the following contracts: the Ghostbusters Loans, Monkey Man ("MM") Loans, Gossamer Loans, Hailey and the Hero Heart ("HHH") Loans, Bubbles Hotel Loans, Young Bear Grylls Loans, and Fables Loans. *Id.* In each contract, in consideration for the loan, the Defendants promised to pay RSBV back the principal of the loan, along with 10% in interest. *Id.*

To induce the Plaintiffs to make a loan to the Defendants in order to finance another project, the production of a series entitled Pathway, Mr. Cloth made several material misrepresentations to Mr. Harris. *Id.* ¶¶ 43-48. In an email dated February 24, 2021, Mr. Cloth informed Mr. Harris that the Fables Loans, Bubbles Loans, and HHH Loans would be repaid by the third quarter of 2021, "worst case," and that there was no risk associated with the loans, even though Mr. Cloth knew when he sent that email that there was a substantial likelihood that the loans would not be paid back. *Id.* ¶¶ 43-45. In the same email, Mr. Cloth informed Mr. Harris that the MM Loan would be paid back by "late summer" of 2021, even though Mr. Cloth knew when he sent that email that the loan would not be paid back by late summer. *Id.* ¶ 46. In May of 2021, Mr. Cloth told Mr. Harris that Pathway had been "greenlit" for five seasons, even though Mr. Cloth knew that Pathway had only been greenlit for one season. *Id.* ¶ 47.

Ultimately, RSBVP loaned the Defendants more than $6,000,000 to finance the production of Pathway in reliance upon Mr. Cloth's representations. *Id.* ¶ 48. In consideration for the loan, the Defendants promised to pay RSBVP back the principal of the loan and 15% in interest. *Id.* ¶ 51. However, as of the filing of the Complaint, CWMF had not paid back the Plaintiffs for any of the loans.

## II. Procedural Background

The Plaintiffs bring two counts in the Complaint related to the Defendants' failure to repay the Plaintiffs. In Count I, the Plaintiffs state a claim for breach of contract. *Id.* ¶¶ 52-57. In Count II, the Plaintiffs state a claim for fraud, alleging that Mr. Cloth made material misrepresentations to Mr. Harris to induce the Plaintiffs to invest in Pathway; the Plaintiffs were so induced; and the Plaintiffs were then damaged when they invested in Pathway based upon the material misrepresentations and lost their investments. *Id.* ¶¶ 58-65.

The Defendants moved to dismiss the Complaint. In the Motion to Dismiss, the Defendants argue that the Plaintiffs fail to state a claim for fraud with the particularity required by Federal Rule of Civil Procedure 9(b). DE 21 at 15-21. Further, since the Plaintiffs fail to state a claim for fraud, consequently, the Court does not have personal jurisdiction over the Defendants under Florida Statute § 48.193(1)(a)(2) and, otherwise, does not have personal jurisdiction over the Defendants. In this Order, first, the Court analyzes whether the Plaintiffs have stated a claim for fraud. Then the Court turns to the issue of personal jurisdiction.

## III. Failure to State a Claim

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. [But] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To comply with this Rule, a plaintiff must identify "the who, what, when, where, and how of the fraud alleged" in his or her complaint. *De Ford v. Koutoulas*, No. 6:22-CV-652-PGB-DCI, 2023 WL 2709816, at *7 (M.D. Fla. Mar. 30, 2023), *reconsideration denied*, No. 6:22-CV-652-PGB-DCI, 2023 WL 3584077 (M.D. Fla. May 22, 2023) (quoting *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022)).

In doing so, the plaintiff will allege each element of fraud with enough specificity to notify the defendant of his or her "precise misconduct." *Id.* (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "Under Florida law, the elements of fraud are '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation.'"[1] *Omnipol*, 32 F.4th at 1307 (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Therefore, in this case, the Court will dismiss the Plaintiffs' Complaint if the Plaintiffs fail to allege with particularity any of these elements.

### A. False Statement Concerning a Material Fact

In the Complaint, the Plaintiffs allege that Mr. Cloth made several false statements concerning material facts. The Plaintiffs allege that Mr. Cloth made the following false statements to Mr. Harris: (1) the Fables Loans, Bubbles Loans, and HHH Loans would be repaid, "worst case" scenario, by the third quarter of 2021; (2) there was "zero" risk associated with the Fables Loans, Bubbles Loans, and HHH Loans; (3) the MM Loan would be paid back by "late summer" of 2021 at the latest; and (4) the Pathway series had already been "greenlit" for five seasons. In the Motion to Dismiss, the Defendants argue that these statements do not constitute false statements concerning material facts because the Plaintiffs fail "to explain how Cloth's statements concerning [CWMF]'s intent to perform under the unrelated Film Contracts—statements made three months

---

[1] The parties disagree as to whether a plaintiff's reliance must be justifiable or reasonable in order to state a fraud claim under Florida law. The Defendants argue that a plaintiff must prove that his or her reliance was justifiable or reasonable. DE 21 at 18-21. In their Response, the Plaintiffs argue that the Florida Supreme Court clearly stated that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). While the Defendants attempt to counter this clear pronouncement of the law by citing to *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999), and similar cases, the Court is not persuaded that the <u>Mergens</u> line of cases stands for the proposition that a plaintiff must prove that his or her reliance was justifiable or reliable in order to state a fraud claim (when the fraud claim is not factually analogous to the facts in <u>Mergens</u>). Instead, the Court agrees with the Eleventh Circuit's interpretation of this line of cases, as outlined in *Affiliati Network, Inc. v. Wanamaker*, 847 F. App'x 583, 588 (11th Cir. 2021). Therefore, the Court agrees with the Plaintiffs that the Plaintiffs do not need to plead justifiable reliance in order to state a fraud claim under Florida law.

prior to the Pathway investment—so induced" the Plaintiffs to invest in the Pathway series and "'promises of future action,' such as intent to perform under a contract, 'are usually insufficient' to support a fraud claim." DE 21 at 17.

In ruling upon a motion to dismiss, the court accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017).  In general, to support a fraud claim, a false statement "must concern a past or existing fact." *Treminio v. Crowley Mar. Corp.*, No. 3:22-CV-174-MMH-PDB, 2023 WL 113565, at *11 (M.D. Fla. Jan. 5, 2023).  But "[a] promise can support a fraud claim, however, when the promisor had no intention of performing at the time the promise was made. This is because a statement of the promisor's present intent is considered a statement of present fact." *Adler v. WestJet Airlines*, Ltd., 31 F. Supp. 3d 1381, 1386 (S.D. Fla. 2014).

Here, when accepting all of the factual allegations pled in the Complaint as true and viewing them in the best possible light for the Plaintiffs, the Plaintiffs have pled that Mr. Cloth made false statements concerning material facts.  The false statements that Mr. Cloth made when he said that CWMF would pay back the film loans, knowing that CWMF would not actually do so, and that Pathway was greenlit for five seasons, knowing that it was not, are material statements. These statements are the kinds of statements that an investor would rely upon to determine whether to invest in a new show, as the statements go to the timeline for the investor's returns on the investor's first round of investments and the strength of the new, potential investment.

B. **Knowledge that the Representation Is False**

In the Complaint, the Plaintiffs plead that Mr. Cloth knew that his misrepresentations were false at the time he made them.  The Plaintiffs allege that Mr. Cloth knew that the timelines that he provided to Mr. Harris to inform Mr. Harris of when he was going to be repaid for his loans

were false "based on the actual status of the corresponding Films." DE 1 ¶¶ 44-46. And the Plaintiffs also claim that Mr. Cloth knew that Pathway was not greenlit for more than one season at the time he said it was, but the Plaintiffs do not specify why Mr. Cloth knew this or how they know that Mr. Cloth knew this. *Id.* ¶ 47.

In the Motion to Dismiss, the Defendants argue that the Plaintiffs fail to state a fraud claim because the Plaintiffs' allegations about Mr. Cloth's knowledge is "conclusory." DE 21 at 17-18. They argue that the Plaintiffs fail to explain "what that 'actual status' was, how RSBVP became aware of it, or how that 'actual status' belied Cloth's purported representations." *Id.* In Response, the Plaintiffs argue that they adequately pled that Mr. Cloth knew that his misrepresentations were false and, in addition, the "fraudulent misrepresentation about Pathway—*i.e.*, that it had been 'greenlit' for five seasons—was a statement of present fact, and thus that allegation alone is sufficient for purposes of pleading fraud." DE 35 at 15.

Here, when accepting all of the factual allegations pled in the Complaint as true and viewing them in the best possible light for the Plaintiff, the Plaintiffs have pled that Mr. Cloth knew that he had no intention to follow through on his promises. Rule 9(b) "must not abrogate the concept of notice pleading." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)). As the Rule indicates, a plaintiff can plead knowledge generally, as the Plaintiffs did in this case when the Plaintiffs provided in general their theory of why Mr. Cloth knew that his statements about payment timelines were false. In addition, the Court agrees with the Plaintiffs that they sufficiently pled that Mr. Cloth knew that Pathway had not been greenlit at the time he made his misrepresentation about the show to Mr. Harris.

### C. Other Elements of Fraud

The Plaintiffs sufficiently plead the last two elements of fraud under Florida law: that Mr. Cloth intended his misrepresentations to induce the Plaintiffs to act and that the Plaintiffs were injured by acting in reliance upon the misrepresentations. First, in the Complaint, the Plaintiffs allege that Mr. Cloth's statements were made with an intention to induce the Plaintiffs to invest in Pathway. DE 1 ¶ 48. In the Motion to Dismiss, the Defendants do not argue persuasively to the contrary. As explained above in Section III.A., since Mr. Cloth's misrepresentations are the kinds of statements that an investor would solicit when considering a new investment and, therefore, the kinds of statements that someone would make to an investor in the hopes of soliciting new investments, especially when made during conversations between a debtor and investor, the Plaintiffs have sufficiently pled that Mr. Cloth made his material misrepresentations with the intention to induce the Plaintiffs into investing in Pathway. Second, in the Complaint, the Plaintiffs allege that they were injured by the Defendants' fraud. The Defendants do not argue that the Plaintiffs fail to plead injury from their reliance upon Mr. Cloth's misrepresentations. Therefore, the Plaintiffs have sufficiently pled that they suffered injury when they relied upon Mr. Cloth's misrepresentations to lend the Defendants more than $6,000,000, without any return as of the filing of this Complaint.

For reasons outlined in this Section, the Plaintiffs have sufficiently pled all of the elements of fraud under Florida law. Since the Plaintiffs have alleged a fraud claim against the Defendants, the Court turns to the issue of whether the Court has personal jurisdiction over this action.

### IV. Personal Jurisdiction

To determine whether a court has personal jurisdiction over an action, the court engages in a "two-part analysis." *Sanchez v. AT&T Corp.*, No. 98-2123-CIV-JORDAN, 1999 WL 1427692,

at *2 (S.D. Fla. Nov. 2, 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "First, the court considers the jurisdictional question under the state long-arm statute. If there is a basis for the assertion of personal jurisdiction under the state statute, the court next determines whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment . . . ." *Id.* (citation omitted).

In the Motion to Dismiss, the Defendants argue that the Court lacks personal jurisdiction over the action because none of Florida's long-arm statutes are applicable. DE 21 at 10-12. And, even if they were applicable, the Court's exercise of personal jurisdiction over the Defendants would not comport with the Due Process Clause. *Id.* at 12-15. In Response, the Plaintiffs argue that the Court has personal jurisdiction over this action under Florida Statutes §§ 48.193(1)(a)(2) and 48.193(1)(a)(7). The Court begins its personal jurisdiction analysis with § 48.193(1)(a)(2).

### A. Florida Statute § 48.193(1)(a)(2)

Under § 48.193(1)(a)(2), a person "submits himself or herself . . . to the jurisdiction of the courts of [Florida] for any cause of action arising from . . . [c]omitting a tortious act within [Florida]." "This provision is broadly construed as it permits specific jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state." *Koutoulas*, 2023 WL 2709816, at *8 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999)). In addition, a tortfeasor can commit a tort "within" Florida "by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002).

The Plaintiffs have stated a fraud claim against the Defendants based on Mr. Cloth's misrepresentations, which he made on behalf of CWMF, and which he made via phone call and email with the Plaintiffs. The Plaintiffs attached an affidavit to their Response to the Defendants'

Motion to Dismiss. In the affidavit,[2] Mr. Harris attests that he took Mr. Cloth's phone call, while he was in Florida, and he received and read Mr. Harris' emails, while he was in Florida. DE 35-1 ¶¶ 15-17. Because the Plaintiffs have stated a claim against the Defendants for fraud arising from Mr. Cloth's communications with the Mr. Harris, while Mr. Harris, a Florida resident, was in Florida, § 48.193(1)(a)(2) applies in this case.

Since § 48.193(1)(a)(2) applies, the Court need not address the Plaintiffs' additional argument that § 48.193(1)(a)(7) applies as well. Instead, the Court turns to the issue of whether exercise of personal jurisdiction over the Defendants comports with the Due Process Clause.

**B. Due Process Clause**

Whether the Court has specific jurisdiction over the Defendants is the relevant inquiry.[3] To determine whether there is specific jurisdiction over a defendant, a court follows three steps:

> (1) we first consider "whether [a] plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum" state; (2) then we evaluate "whether the . . . defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state"; and (3) finally, we assess "whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"

---

[2] In the Complaint, the Plaintiffs plead that Mr. Harris received some of the phone calls and emails from Mr. Cloth while Mr. Harris was in Florida because the Plaintiffs pled that Mr. Harris resides in Florida and works as the principal of two Florida-based companies. Also, the Plaintiffs pled that the Defendants breached their contracts "by failing to perform acts required by the contract to be performed in [Florida]." DE 1 ¶ 12. These facts are sufficient to justify application of § 48.193(1)(a)(7), which provides for jurisdiction over any person "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." On the Motion to Dismiss, the Defendants proffer rebuttal evidence. *See* DE 22. Once a defendant proffers evidence to rebut the exercise of personal jurisdiction, the plaintiff must show facts justifying application of the Florida long-arm statute. *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n*, 325 So. 2d 58, 62 (Fla. Dist. Ct. App. 1976). In this case, the Plaintiffs put forward Mr. Harris' affidavit. Therefore, because the Complaint sufficiently pled facts justifying the application of Florida long-arm statutes, the Defendants challenged the exercise of jurisdiction based on its facts, and the Plaintiffs put forward an affidavit "asserting with particularity specific facts which support a general allegation in a complaint," *id.*, the Court may consider the Plaintiffs' affidavit when ruling upon the Motion to Dismiss.

[3] Neither party contends that the Court has general jurisdiction over the Defendants in this case.

*SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). In the following sub-sections, the Court evaluates each element of the specific jurisdiction analysis.

1. *"Arise out of or Relate to"*

First, the Plaintiffs bear the burden of establishing that the Plaintiffs' claims arise out of or relate to" the Defendants' contacts with Florida. *See id.* The Plaintiffs' fraud claims arise out of Mr. Cloth's calls and emails, made by him and directed to Mr. Harris, who was in Florida and is a Florida resident. As a result, the Plaintiffs argue in their Response that they have proven this element of the specific jurisdiction analysis. DE 35 at 11. The Defendants do not argue to the contrary. Therefore, the Plaintiffs' claims arise out of the Defendants' contacts with Florida.

2. *"Purposely Availed"*

Next, the Plaintiffs also bear the burden of establishing that the Defendants "purposely availed" themselves of the benefit of Florida's laws. *See Narra*, 58 F.4th at 1229 (citing *Mosseri*, 736 F.3d at 1355). "[T]wo applicable tests can determine whether purposeful availment occurred: the effects test and the traditional minimum-contacts test." *Id.* at 1230. To meet the effects test, "the tort must have been 'intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Id.* (quoting *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022)).

In *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), the Eleventh Circuit evaluated whether the court has specific jurisdiction over a defendant who had made threats via email to a Florida-based company. The court determined that the Florida-based plaintiff had met the effects test because the defendant "undoubtedly sent its emails into Florida intentionally" and it "was certainly foreseeable" to the defendant that the plaintiff "would feel [] harm . . . in Florida,

where [the plaintiff] is based. And that is especially true here since [the defendant] knew, from the outset, that it was in a partnership with a Florida-based company." *Id.* at 1230. In addition, in *Tufts v. Hay*, 977 F.3d 1204 (11th Cir. 2020), the Eleventh Circuit determined that the effects test had been met when the defendant's counsel made "repeated misrepresentations . . . to [the plaintiff] in Florida." *Id.* at 1211-12. The court explained that this kind of "purposeful conduct created a substantial connection with the forum state." *Id.* at 1212 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)).

Here, like in *SkyHop* and *Tufts*, Mr. Cloth made "repeated misrepresentations" on behalf of CWMF to Mr. Harris while Mr. Harris was in Florida and while Mr. Harris was acting as the principal of the Plaintiffs, Florida-based entities, with whom the Defendants had contracted. The Defendants contracted with the Florida-based Plaintiffs for loans for film and television projects. Because of these contracts, the contacts between the Defendants and the Plaintiffs were not fortuitous, but rather foreseeable. Therefore, the effects test is met in this case and the Plaintiffs have established that the Defendants purposely availed themselves of the laws of Florida.

3.  *Traditional Notions of Fair Play and Substantial Justice*

Last, the Defendants bear the burden of making out a "'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Narra*, 58 F.4th at 1229 (citing *Mosseri*, 736 F.3d at 1355). Courts "ordinarily consider four factors to resolve this inquiry: 'the burden on the defendant'; 'the forum's interest in adjudicating the dispute'; 'the plaintiff's interest in obtaining convenient and effective relief'; and 'the judicial system's interest in resolving the dispute.'" *Id.* at 1231 (quoting *Del Valle*, 56 F.4th at 1277). "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of

nonresidents causing injury in Florida." *Tufts*, 977 F.3d at 1212 (quoting *Lovelady*, 544 F.3d at 1288).

In the Motion to Dismiss, the Defendants argue that the exercise of personal jurisdiction over them does not comport with traditional notions of fair play and substantial justice because litigating in Florida would be burdensome for them. DE 21 at 14.  In Response, the Plaintiffs argue that Florida's interest in protecting its residents "outweighs any inconvenience" for the Defendants. DE 35 at 12.  While "burden on the defendant is 'always a primary concern'" in this analysis, *Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1249 (M.D. Fla. 2019), the Court agrees with the Plaintiffs.  The Defendants do not persuasively argue that litigating in Florida will be burdensome for them because they do not explain why it would be burdensome, apart from noting that they are a Canadian company.  And because of Florida's interest in this case, the Plaintiffs' interest in obtaining convenient relief, and the judicial system's interest in resolving the dispute, the Court determines that exercising specific jurisdiction over the Defendants in this case comports with traditional notions of fair play and substantial justice.

Therefore, Florida Statute § 48.193(1)(a)(2) applies, and exercising specific jurisdiction over the Defendants is constitutional.  For these reasons, the Court has personal jurisdiction over the Defendants.

## V. Punitive Damages

The Plaintiffs seek punitive damages for their fraud claim. DE 1 ¶65.  "The overwhelming weight of authority in [Florida] makes it clear that proof of fraud sufficient to support compensatory damages necessarily is sufficient to create a jury question regarding punitive damages." *Cates v. ZELTIQ Aesthetics, Inc.*, No. 619CV1670ORL40LRH, 2020 WL 13413674,

at *4 (M.D. Fla. Aug. 25, 2020) (alteration in original) (quoting *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 538-39 (Fla. 1987)).

In the Motion to Dismiss, the Defendants also move the Court to dismiss the Plaintiffs' demand for punitive damages. The Defendants argue that the Court should dismiss the Plaintiffs' demand for punitive damages because the Plaintiffs do not allege that Mr. Cloth acted "for 'malicious' or 'reprehensible' purposes." DE 21 at 21. In Response, the Plaintiffs argue that they allege that Mr. Cloth "acted willfully, maliciously, oppressively and despicably" and may recover punitive damages. DE 35 at 16 (quoting DE 1 ¶65).

The Plaintiffs have alleged that Mr. Cloth acted for malicious and reprehensible purposes, as required to recover punitive damages for fraud. Therefore, when construing the facts alleged in the light most favorable to the Plaintiffs, the Plaintiffs' demand for punitive damages is pled sufficiently to withstand the Motion to Dismiss.

## VI. Conclusion

The Plaintiffs have stated a fraud claim with the requisite particularity under Rule 9(b). The Court has personal jurisdiction over the Defendants. And, the Plaintiffs' demand for punitive damages is adequately supported in the Complaint. Accordingly, it is **ORDERED** and **ADJUDGED** that the Defendants' Motion to Dismiss is **DENIED**. The Defendants shall file an answer to the Plaintiff's Complaint no later than July 17, 2023.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of July, 2023.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE